IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GARY W. YOUNGBLOOD, | ) | |
| | ) | |
| Youngblood, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:16-CV-108-WHA |
| | ) | [WO] |
| JEFFREY DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Gary Youngblood, formerly an inmate in the custody of the Alabama Department

of Corrections ("ADOC"), files this *pro se* 42 U.S.C. § 1983 action alleging that prison officials

at the Easterling Correctional Facility ("Easterling") are liable on constitutional claims arising

from Defendants' processing and handling of Plaintiff's legal mail and their failure to provide him

with adequate assistance in filing meaningful legal papers. Youngblood brings suit against

Commissioner Jefferson Dunn, Captain Nathaniel Lawson, Gerald Wagner, Laura Morgan, Sharon

Blakely, Warden Derrick Carter, Warden Carter Davenport, Lieutenant Phelix Woods, and Captain

Willie Bryant.  He requests actual and punitive damages, court costs, and legal fees. Doc. 1.

Defendants filed special reports and supporting evidentiary materials addressing

Youngblood's claims for relief. Docs. 28, 42. In these filings, Defendants deny they acted in

violation of Youngblood's constitutional rights.  *Id.*  Upon receipt of Defendants' special reports

the court issued an order directing Youngblood to file a response, including sworn affidavits and

other evidentiary materials, and specifically cautioning Youngblood that "the court may at any

time thereafter and without notice to the parties (1) treat the special reports and any supporting

evidentiary materials as a motion for summary judgment." Doc. 30, 46. Youngblood filed

responses to Defendants' special reports, *see* Docs. 34, 36, 38, 44, 47, but these responses fail to demonstrate a genuine dispute of material fact. Doc. 30 at 2. The court will treat Defendants' reports as motions for summary judgment, and it recommends that these motions be resolved in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007)(per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Youngblood to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go

beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  This court will also consider "specific facts" pled in Youngblood's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable … or is not significantly probative … summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice … ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

　　To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts… . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein*, 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir.

2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage… . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 Fed. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Youngblood's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. FACTUAL BACKGROUND

Youngblood previously sued prison officials under 42 U.S.C. § 1983 alleging, in part, that they unconstitutionally prevented him from using money in his prison account to pay a patent application fee. *Youngblood v. Ala. Dept. of Corrections,* Civil Action No. 2:15-cv-214-MHT (M.D. Ala. 2018). Youngblood desired a patent for an invention he developed and which he believed would have commercial potential. *Id.* He sought a patent to protect his intellectual property. *Id.*

4

In the present action, Youngblood challenges Defendants' conduct in processing inmate mail under Administrative Regulation ["AR"] 448, and specifically, their failure to maintain proper legal mail logs for outgoing and incoming inmate legal mail. This failure, Youngblood claims, prevented him from submitting copies of legal mail logs to the United States Patent and Trademark Office ("USPTO") to support a petition to withdraw a holding of abandonment.[1] Youngblood maintains that this conduct also prevented him from producing legal mail logs as evidence in a prior civil suit to support his motions arguing that Defendants were not complying with AR 448's requirement that: (1) inmates be provided two stamps per week for legal mail, and (2) the names of inmates receiving free stamps be maintained in a log. Additionally, Youngblood complains that Defendants' failure to process correspondence considered legal mail properly under AR 448 prevented him from providing evidence to the Alabama Department of Revenue that he had not received prior mailings from the state agency regarding false tax returns filed in his name. Although he provided proof to the Department of Revenue that he was incarcerated when the false tax returns were filed in his name, Plaintiff maintains that he could not provide the agency with copies of prison legal mail logs as evidence he had received no notices from them prior to receiving a notice of possible penalties and sanctions for failing to reply to the agency's previous mailings. Doc. 1.

---

[1] Attached to Youngblood's complaint is a copy of a decision by the USPTO to dismiss Youngblood's June 22, 2015, petition to the agency requesting the USPTO to withdraw its notice of abandonment regarding his patent application. Doc. 1-4. Youngblood states that he received the decision on January 11, 2016, but complains that it was not processed as legal mail. Doc. 1. In its January 2016 decision, the USPTO determined Youngblood's patent application No. 14/544,189 "became abandoned for failure to file a proper and timely reply to the Notice to File Miss Parts mailed January 20, 2015." Doc. 1-4. The USPTO mailed the notice of abandonment to Youngblood on June 8, 2015. *Id.* Youngblood contends that he never received the Notice to File Missing Parts but was unable to produce evidence of non-receipt of that correspondence because Defendants failed to process/log his mail from government agencies regularly in accordance with AR 448. Doc. 1.

### III. DISCUSSION[2]

**A. Absolute Immunity**

To the extent that Youngblood requests monetary damages from Defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 Fed. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

---

[2] To the extent that Youngblood raises additional allegations of constitutional violations which were not affirmatively pled in his complaint through any opposition, under settled law, a plaintiff may not "amend" his complaint through his opposition by raising a new claim. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage."). The court, therefore, addresses Youngblood's claims against Defendants as alleged in the complaint and considers the facts before it only to the extent that they support those claims. *See Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

*Selensky*, 619 Fed. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 Fed. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity); *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

**B. Injunctive Relief**

To the extent that Youngblood requests declaratory and/or injunctive relief against Defendants, such request is due to be dismissed as moot. Youngblood is no longer incarcerated. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).

**C. Qualified Immunity**

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*,

536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the incidents complained of by Plaintiff occurred. Youngblood must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To meet his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation, and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in

the relevant state." See *id*. at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

## D. The Section 1983 Claims

Under 42 U.S.C. § 1983,

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### i. Violation of Administrative Regulations

Youngblood challenges Defendants' failure to adhere to prison regulations regarding mail handling which he contends interfered with his right to petition government agencies and hindered

his prosecution of legal proceedings in numerous governmental departments, including the Alabama Department of Revenue and the USPTO. Regarding matters related to his patent application, Youngblood maintains that a petition to withdraw a holding of abandonment he filed with the USPTO was dismissed by the agency because he could not provide copies of incoming legal mail logs from Easterling which would have reflected that he never received from the USPTO a "Notice To File Missing Parts." This occurred, Youngblood claims, because Defendants did not comply with AR 448 and process his mail from the USPTO as legal mail for which a written log is maintained. Youngblood contends that he has a vested interest in his patent, which involves surface transportation safety, and consequently, he has a constitutional right to petition various government agencies regarding technology designed to improve safety on the nation's highways. Doc. 1.

Youngblood alleges that Defendants acted in "defiance" of AR 448 by failing to comply properly with the regulation regarding the logging of incoming and outgoing legal mail. Docs. 1, 34, 36, 44. This claim, however, entitles Youngblood to no relief, as an alleged violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights. The fact that state law or state agencies prescribe certain procedures does not mean those procedures acquire federal constitutional dimension. *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (holding prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (finding mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n. 7 (11th Cir.2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates."); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) (finding that the due process clause

of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations ...."); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996) ("[F]ailure to follow prison rules or regulations do not, without more, give rise to a constitutional violation."); *see also Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir.1991) (finding that if state law grants more protections than Constitution requires state's failure to abide by its law is not a federal constitutional issue); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527–28 (11th Cir.1987) (finding violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

In light of the foregoing, Youngblood's claim that Defendants' violated his constitutional rights by failing to follow prison administrative regulations entitles him to no relief. Defendants are entitled to qualified immunity on this claim.

### ii. First Amendment

#### a. Access to Courts

As explained, Youngblood contends that Defendants' failure to adhere to the provisions of AR 448 resulted in his mail from government agencies not being processed as legal mail for which a written log is maintained. This, Youngblood contends, prevented him from filing "meaningful legal papers" with federal agencies and this court. Youngblood also challenges Defendants' failures: (1) to provide adequate notary services, (2) to provide free copy services for indigent

inmates, (3) to provide typewriter access, (4) to provide adequate time in the law library, and (5) to provide legal materials from multiple jurisdictions. Doc. 1.

Defendants maintain that incoming inmate mail at Easterling is sorted as regular mail and "legal mail." Under AR 448, legal mail is deemed to be "[l]etters to and from attorneys, courts, judges, clerks, and other officials of the courts and government agencies." Regulation 448 directs that incoming legal mail be opened in the presence of the inmate, and that a log be maintained which contains the date the mail is inspected for contraband, lists the legal mail received including the sender's name, and includes a signature by the inmate. The process for outgoing legal mail directs that inmates be provided two free stamps a week for legal mail only, and that a log is maintained containing the names of inmates receiving free stamps, the recipient's name and address, and the date.[3] Doc. 27-7.

Defendants' undisputed evidence includes copies of the incoming mail logs maintained at Easterling from January 2015 through April 2016. These logs show that Youngblood routinely received and signed for mail from various state and federal courts and state and federal agencies. Regarding Youngblood's challenge to the legal resources and materials available to him, Defendant Wagner states that he denied Youngblood notary services if he was named in a lawsuit filed by the inmate to prevent any potential conflicts of interest but provided him with the names of other officers at Easterling who provided notary services. Inmates have access to notary services when the law library is open, which Defendant Wagner indicates is approximately 25-30 hours per week as specified daily in the institution's newsletter. According to Defendant Wagner,

---

[3] Defendant Blakely states that logs for outgoing free legal mail have been maintained since July 23, 2015. Doc. 28-5. Youngblood does not dispute Defendants' evidence that Youngblood never requested copies of the institution's outgoing mail logs since July 23, 2015. *Id.*

typewriters have not been assigned to Easterling's law library property inventory since May 2011.[4] The law library has two computers—last updated in December 2015—along with those book volumes mandated by the courts, but Defendant Wagner indicates that Easterling's law library can only provide the materials for review or research that it is issued. Logs maintained at Easterling for law library sign-in and computer sign-in reflect that Youngblood routinely accessed the law library, where he had available to him to a computer, legal materials, pens, pencils, and carbon paper. Docs. 28-3, 28-4, 28-5, 28-6, 28-7, 28-8, 28-9, 28-10, 28-11.

The First Amendment broadly guarantees the right "to petition the Government for a redress of grievances." See U.S. Const. amend. I. More specifically, the First Amendment guarantees the right of prisoners to meaningfully access the legal process of the courts to present complaints. *See Woodford v. Ngo*, 548 U.S. 81, 122 (2006); *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (*citing Johnson v. Avery*, 393 U.S. 483 (1969)). In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons who are trained in the law." *Id*. at 828. To establish a violation of the right to access to the courts, however, a prisoner must allege facts sufficient to show that: (1) a non-frivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a result. *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996). The *Lewis* Court disclaimed any expansion of the right of access to the courts which suggested "that the State must

---

[4] Youngblood maintains that a typewriter does exist in Easterling's law library, which inmates routinely use. He asserts that a document he had to prepare for the USPTO directed that the form be typewritten, but Defendant Wagner refused to let him use the typewriter. Assuming, *arguendo*, that there is a typewriter in Easterling's law library, Youngblood has not shown that his being denied access to it violated any constitutional right, for the reasons explained in the Recommendation. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).

enable the prisoner to discover grievances, and to litigate effectively once in court… ." To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] … the Constitution requires." *Id*. at 354 (emphasis in original).

The *Lewis* Court determined that the actual injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement… .  [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." 518 U.S. at 356-357.  "[T]he Constitution does not require that prisoners … be able to conduct generalized research, but only that they be able to present their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360.  The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.  A federal district court must " 'scrupulously respect[] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.'  [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.  An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348. There must be evidence of deterrence of a nonfrivolous claim "such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998).

Here, Youngblood fails to allege that Defendants' challenged conduct, including Defendants' alleged failure to comply with prison administrative regulations regarding mail handling on any particular occasion, precluded his pursuit of a non-frivolous direct or collateral attack upon either his criminal conviction or sentence or the conditions of his current confinement. *See Lewis*, 518 U.S. at 355 (right to access to the courts protects only an inmate's need and ability to "attack [his] sentence[ ], directly or collaterally, and … to challenge the conditions of [his] confinement."). Rather, Youngblood's access challenge concerns matters associated with patent filings and taxes, and any impairment of the capacity to litigate regarding these interests is "simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* ("*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."); *see also Tormasi v. Hayman,* 443 Fed. App'x. 742, 745 n.3 (3d 2011 (per curiam) (complaint about ability to pursue patent did not state access to court claim). Further, regarding Youngblood's conclusory claim that Defendants refused to provide him with free legal mail stamps for documents he sought to file in a previous lawsuit, he has not demonstrated he suffered any adverse consequences as a result of Defendants' actions which resulted in actual injury.[5] *See Lewis*, 518 U.S. at 348; *see also Wardell v. Duncan,* 470 F.3d 954, 959 (10th Cir. 2006) (internal quotation marks and citations omitted) ("A plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim."). Finally, Youngblood has not alleged that a non-frivolous claim was lost or rejected due to his perceived

---

[5] The court takes judicial notice of docketed proceedings in *Youngblood v. ADOC*, Civil Action No. 2:15-CV-214 (M.D. Ala. 2018), which Youngblood initiated in April 2015. A review of the docket reflects that Youngblood was able to prosecute his claims vigorously and that the case was dismissed following a determination that Defendants were entitled to summary judgment. Further, the pleadings for which Youngblood sought copies of prison legal mail logs concerned non-dispositive motions. *See* Docs. 34, 44.

impairments regarding the adequacy or availability of notary services, multi-jurisdiction legal materials, typewriters, computers, or free photocopies.[6] *See Petrick v. Maynard* 11 F.3d 991, 995 -996 (10th Cir. 1993) ("[A] prisoner must do more than make a mere conclusory allegation of need for unspecified or unlimited materials."); *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir.1983) ("[B]road as the constitutional concept of liberty is, [however,] it does not include the right to xerox.").

The court finds no evidence that Youngblood suffered actual injury to a nonfrivolous legal action caused by any Defendant, that "a complaint he prepared was dismissed," or that he was "so stymied" by prison officials' actions that "he was unable to even file a complaint," direct appeal, or petition for writ of habeas corpus that was not "frivolous." *Lewis*, 518 U.S. at 351. The conduct and actions of Defendants challenged by Youngblood either do not fall into one of these categories or, if they do, fail to establish the requisite injury. Defendants are, therefore, entitled to qualified immunity on Youngblood's right of access to courts claim.

### b. Freedom of Speech

The court considers Youngblood's allegations regarding Defendants' treatment of his incoming and outgoing mail to also implicate a free speech claim under the First Amendment. "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al–Amin v. Smith*, 511 F.3d 1317, 1333, *citing City of Cincinnati v. Discovery*

---

[6] The court notes that Youngblood's own evidence reflects that the USPTO, in its written decision to deny Youngblood's petition to withdraw holding of abandonment, understood he was a *pro se* inventor/applicant and might not have as elaborate a docketing system to support an argument of non-receipt of an agency notice. Doc. 1–4. Nonetheless, the written communication from the USPTO informed Youngblood that such did not "warrant a total waiver of a showing that includes copies of docket records or an adequate proxy for such copies" including the *pro se* applicant's own maintenance of a log of communications from and to the USPTO, "with dates of receipt, due dates and mailing dates of responses and other papers filed noted," which could be maintained on a file jacket noting those important dates. *Id.*

*Network, Inc.*, 507 U.S. 410, 427 (1993). *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir.2003); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995). "[An inmate] has a First Amendment free speech right [to send and receive legal mail] separate and apart from his constitutional right of access to the courts." *Al–Amin*, 511 F.3d at 1333. This right is, of course, subject to the limitations attendant to his status as a prisoner and the legitimate penological interests of jail administrators. *Id.*; *see also Turner v. Safely,* 482 U.S. 78 (1987). Isolated incidents of mail interference, however, are generally insufficient to establish a constitutional violation. *Davis,* 320 F.3d at 351 (holding that the allegation of two instances of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm; inmate must show a prison official "regularly and unjustifiably interfered" with his mail); *see also Florence v. Booker*, 23 Fed. App'x. 970, 972 (10th Cir. 2001) ("single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts").

The unrefuted evidence reflects that during the time period in question Youngblood received numerous pieces of legal mail from the courts of this state as well as state and federal agencies. Youngblood has come forward with no significantly probative evidence that any Defendant regularly or unjustifiably interfered with his mail—incoming or outgoing—or that any Defendant acted with improper motive in this regard. *See Davis*, 320 F.3d at 351; *Al-Amin*, 511 F.3d at 1334. Because Youngblood fails to produce any evidence to substantiate his allegation that the conduct about which he complains amounted to an unconstitutional interference with his legal mail, Defendants are entitled to qualified immunity on his First Amendment claim. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987) (holding that "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment."); *Anderson*, 477 U.S. at 252.

### iii. Equal Protection

Youngblood alleges that he is an indigent inmate and Defendants' refusal to provide him with free copies in order to assist him in filing meaningful legal papers violated his equal protection rights. To establish a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment, and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a … disproportionate impact. … [An allegation] of ... discriminatory intent or purpose [related to a constitutionally protected interest] is required to [set forth] a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).

"'Discriminatory purpose' … implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker … selected … a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Where an inmate plaintiff challenges actions of a correctional official, exceptionally clear proof of discrimination is required.  *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Mere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause.  *E & T Realty Company v. Strickland*, 830 F.2d 1107 (11th Cir.

1987); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987) (claims of mere disparity of treatment are insufficient to establish discrimination).

Youngblood does not allege that Defendants subjected him to adverse treatment because of some form of invidious discrimination based on a constitutionally protected interest. *Sweet,* 467 F.3d at 1319. And neither individuals who are inmates or who are poor constitute a suspect class. *See Harris v. McRae,* 448 U.S. 297, 322 (1980) (holding poverty is not a suspect classification); *Abdul—Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (finding indigent prisoners are not a suspect class); *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990) (same); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) (same). Youngblood simply makes the conclusory assertion that Defendants' refusal to provide him free copies of documents when he lacked funds to pay for them resulted in an equal protection violation. This is insufficient to demonstrate an equal protection violation, and Defendants are therefore entitled to qualified immunity on this claim.

### iv. Due Process

Youngblood claims that the actions of Defendants about which he complains violated his right to due process because they denied him basic, minimum assistance in filing his meaningful legal papers. Doc. 1. To state a claim for denial of due process under the Fourteenth Amendment, Plaintiff must allege that a constitutionally protected life, liberty, or property interest was at stake. The Constitution itself does not give prisoners a protected interest in a penal institution's internal administrative procedures, *Caceres*, 440 U.S. at 751–52, physical access to a law library, *Lewis,* 518 U.S. at 356–57, free access to the state's photocopying machinery, *Jones,* 697 F.2d at 803, or the services of a notary. *See Duncan v. Foti,* 828 F.2d 297, 298 (5th Cir. 1987) (finding inmates have no constitutional right to notary services given the alternative of filing unsworn declarations under penalty of perjury under 28 U.S.C. § 1746). Further, the law is settled that prison

administrators are accorded wide deference in determining the policies and procedures for handling prison administration, and federal courts rarely interfere in such discretionary decisions. *See generally Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 859 (4th Cir. 1975)(*en banc*)(describing the federal courts' deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation).

While a state can create a constitutionally protected liberty interest, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976), quoted in *Sandin*, 515 U.S. at 480.

Other than his conclusory allegation that the conduct complained of subjected him to significant hardship in relation to the ordinary incidents of prison life, Youngblood has not shown that he was deprived of any liberty interest granted by the Constitution based on the challenged actions he attributes to Defendants. *See Sandin*, 515 U.S. at 484. His allegations do not include facts upon which a State-created liberty interest could be based, nor has he alleged any facts which show that the challenged conduct amounted to a dramatic departure from the ordinary conditions of confinement. *Id.* at 485-87. Because Youngblood has not alleged deprivation of a protected liberty interest, Defendants are entitled to qualified immunity on this claim. *See id.* at 487.

**v. Respondeat Superior**

Youngblood alleges that Commissioner Dunn, Warden Carter, Warden Davenport, Lieutenant Woods, and Captains Lawson and Bryant failed to intervene, stop, or prevent the conduct about which he complains.  However, there is no evidence these Defendants acted or failed to act in a deliberately indifferent manner regarding Youngblood's allegations. Further, these Defendants either deny any personal knowledge or involvement with the claims made the basis of the complaint or deny having any authority or control over Easterling's mail room or  the daily operations of the facility regarding the matters challenged by Youngblood.  Docs. 28-1, 28-2, 42-1–4.

Youngblood has not produced any evidence to show that Defendants Dunn, Davenport, Carter, Lawson, Bryant, or Woods were directly responsible for or personally participated in establishing the conditions about which he complains. In such a situation, the law in this circuit is well settled. "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted); *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014). "Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Marsh v. Butler Co. Ala.*, 268 F.3d 1014, 1035 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (A supervisory official "can have no *respondeat superior* liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of *respondeat superior* or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), *citing Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold

supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of correctional officials at Easterling could attach to Defendants Dunn, Davenport, Carter, Lawson, Bryant, or Woods only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Here, Youngblood presents no evidence which would create a genuine dispute of material fact regarding the claims lodged against Defendants Dunn, Davenport, Carter, Lawson, Bryant, or Woods. The evidence fails to show that these defendants personally participated in or had any involvement, direct or otherwise, with the claims made the basis of the complaint. In light of the foregoing, Defendants Dunn, Davenport, Carter, Lawson, Bryant, and Woods can be held liable for actions of correctional officials at Easterling only if their actions bear a causal relationship to the purported violations of Youngblood's constitutional rights. To establish the requisite causal connection and avoid entry of summary judgment in favor of Defendants Dunn, Davenport, Carter, Lawson, Bryant, and Woods, Youngblood must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[ ] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Defendants Dunn, Davenport, Carter, Lawson, Bryant, or Woods] directed the [facility's staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A

thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Youngblood has not met this burden.

The record before the court contains no evidence to support an inference that Defendants Dunn, Davenport, Carter, Lawson, Bryant, or Woods directed correctional officials to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Youngblood presents no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Defendants Dunn, Davenport, Carter, Lawson, Bryant, or Woods failed to take corrective action. Finally, no evidence is presented that the challenged actions/conditions occurred pursuant to a policy enacted by Defendants Dunn, Davenport, Carter, Lawson, Bryant, or Wood. Thus, the requisite causal connection has not been shown, and liability under the custom or policy standard is not warranted. Based on the foregoing, Defendants Dunn, Davenport, Carter, Lawson, Bryant, or Woods are entitled to qualified immunity on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Docs. 28, 42) be GRANTED;

2. This case be DISMISSED with prejudice;

3. Judgment be ENTERED in favor of Defendants;

4. Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before February 19, 2019**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 4th day of February, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge